IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL J. NOVAK, | ) |
| | ) |
| Plaintiff, | ) Case No.: 14-cv-3649 |
| | ) |
| v. | ) |
| | ) Judge Robert M. Dow, Jr. |
| LITCHFIELD CAVO, LLP; ALAN I. BECKER; | ) |
| CARRIE A. DURKIN; LAURA L. MILNICHUK; | ) |
| GUTH MEDIATIONS, INC.; AND GREGORY | ) |
| P. GUTH; | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendants Litchfield Cavo, LLP, Alan I. Becker, Carrie A. Durkin, and Larua L. Milnichuk's (collectively, the "Litchfield Cavo Defendants") Motion to Dismiss Plaintiff's Complaint [16] and Motion to Strike Certain Paragraphs of Plaintiff's Complaint [19], Defendants Guth Mediations, Inc. and Gregory P. Guth's (collectively, the "Guth Defendants") Motion to Dismiss Plaintiff's Complaint [26], and Plaintiff's Motion for Leave to File a Sur-Response to Defendants' Respective Replies to Their Respective Motions to Dismiss [37]. For the reasons stated below, the Court grants Defendants' motions to dismiss [16, 26], and denies as moot the Litchfield Cavo Defendants' motion to strike [19]. The Court also grants Plaintiff's motion for leave to file a surreply [37].

**I.    Background[1]**

Plaintiff Michael J. Novak has severe-to-profound bilateral congenital sensorineural hearing loss, substantially limiting his ability to communicate. Plaintiff is deaf-oral, which means

---

[1] In reviewing the instant motion, the Court accepts as true the facts alleged in Plaintiff's complaint and makes all reasonable inferences in her favor. See, *e.g.*, *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

1

that he relies on speech reading, his residual hearing, and the reading of non-verbal cues to interpret speech. Plaintiff also suffers from poor vision, which limits his speech-reading range to, at most, seven feet.

Since 2009, Plaintiff has been engaged in myriad legal disputes with the State Parkway Condominium Association ("State Parkway") and, by association, their attorneys, Litchfield Cavo, LLP.[2] In connection with these disputes, Plaintiff has, on occasion, visited Litchfield Cavo's law office in Chicago, Illinois. One such instance occurred on January 19, 2011, when Litchfield Cavo took Plaintiff's deposition. Upon Plaintiff's prompting, Litchfield Cavo arranged for and provided Communication Access Realtime Translation ("CART") services at the deposition to accommodate Plaintiff's hearing disability and, as a result, Plaintiff was fully able to participate in the deposition.

On September 12, 2013, Plaintiff returned to Litchfield Cavo's Chicago office for a mediation conference with State Parkway in an attempt to resolve one of the parties' ongoing legal disputes. Defendant Gregory P. Guth of Guth Mediations, Inc. presided over the mediation. Prior to the mediation, Plaintiff contacted Guth to inform him of his hearing disability and requested information regarding the number of people who would be in attendance at the mediation, the seating arrangements, and the expected ambient noise level, explaining that these factors would determine whether Plaintiff would require CART services at the mediation. Guth provided Plaintiff with general details about how the mediation would proceed and ensured Plaintiff that the hosts would be accommodating to his requests. In response, Plaintiff informed Guth that CART services would not be required.

According to Plaintiff, Defendants repeatedly and intentionally failed to accommodate his hearing disability throughout the mediation, ultimately forcing him to assent to a settlement

---

[2] Defendants Becker, Durkin, and Milnichuk are attorneys at Litchfield Cavo, LLP.

that he did not fully understand. For example, Plaintiff alleges that Guth repeatedly shifted from his seat at the head of the table to a seat across from Plaintiff, where the overhead lights created a shadow that impaired Plaintiff's ability to read Guth's lips. Plaintiff also alleges that throughout the mediation—and despite his repeated objections—State Parkway's insurer (who also was present at the mediation) continually presented him with revised drafts of the parties' evolving settlement agreement, and in doing so would "snatch" Plaintiff's copy of the previous draft, depriving him of his ability to keep track of his edits. In addition, Guth allegedly told Plaintiff that State Parkway would need approximately 20 days to review and approve the settlement agreement (indicating to Plaintiff that the agreement would not be finalized until after the mediation), although Plaintiff later learned that State Parkway allegedly signed the agreement that very day. Plaintiff, a Certified Public Accountant, also highlights an unresolved issue that arose at the mediation as to whether his proceeds from the settlement would be taxable, arguing that he was unable to research this issue during the mediation because he was unable to connect to the Internet on his mobile phone. Plaintiff also alleges that Guth "attacked" Plaintiff with comments about his disability and his unemployment status. Further, Plaintiff claims that he received the initial draft of the settlement agreement at 4:15 p.m., only after Plaintiff's attorney had left for the day. The mediation ended at approximately 5:15 p.m.

Plaintiff's Complaint goes on to detail several disagreements that he has had with the Litchfield Cavo Defendants relating to his ongoing legal disputes with State Parkway. Among those allegations, Plaintiff states that he attempted to visit Litchfield Cavo's office on February 18, 2014 to deliver courtesy copies of a legal document, but a security guard denied him access to the building because he was accompanied by a service animal. Ultimately a Litchfield Cavo staff member came to the lobby to retrieve the courtesy copies. Plaintiff later lodged a complaint

with the building manager, who subsequently apologized for the incident, claiming that the security guard did not have experience with service animals.

On June 20, 2014, Plaintiff filed his Complaint in this case [7], alleging two violations of Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181–12189. Specifically, Plaintiff alleges in Count I that Defendants failed to make aurally delivered information available to him at the September 12, 2013 mediation, and in Count II Plaintiff alleges that Defendants failed to allow Plaintiff time to read the settlement agreement at the September 12, 2013 mediation. On August 7, 2014, the Litchfield Cavo Defendants moved to dismiss Plaintiff's Complaint on several grounds [16, 17], arguing that Plaintiff lacks standing to bring his claims, that Defendants are not "public accommodations" within the meaning of Title III of the ADA, and that Plaintiff failed to state a cause of action because he never requested an accommodation at the September 2013 mediation. The Litchfield Cavo Defendants filed a separate motion to strike certain paragraphs in Plaintiff's Complaint [19], arguing the allegations are unrelated to Plaintiff's claims. On August 19, 2014, the Guth Defendants filed their own motion to dismiss Plaintiff's Complaint [26], arguing that they are not "public accommodations" within the meaning of Title III of the ADA, and that Plaintiff failed to state a cause of action because he did not request CART services at the September 2013 mediation.

**II.    Analysis**

As a threshold matter, the Court addresses Defendants' Rule 12(b)(1) argument that this Court lacks subject-matter jurisdiction over Plaintiff's claims. Article III of the Constitution limits the federal courts' jurisdiction to certain "Cases" and "Controversies." U.S. Const. Art. III, § 2; *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional

limitation of federal-court jurisdiction to actual cases or controversies."); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) ("It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy."). "One element of the case-or-controversy requirement" is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "Standing to bring and maintain a suit is an essential component of this case-or-controversy requirement." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To establish Article III standing, a plaintiff must allege an injury that is "'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2752 (2010)).

Defendants argue that Plaintiff has failed to allege a "concrete and particularized" and "actual or imminent" injury to satisfy the "injury in fact" element of Article III standing.[3] Where, as here, a plaintiff seeks prospective injunctive relief,[4] the plaintiff "must allege a 'real and immediate' threat of future violations of their rights." *Scherr*, 703 F.3d at 1073 (citing *Lyons*, 461 U.S. at 102). Thus, Plaintiff must allege a "real and immediate" threat that Defendants are likely to violate his rights under Title III of the ADA at some point in the future. As explained

---

[3] The Guth Defendants did not move to dismiss Plaintiff's Complaint for lack of standing. However, "because standing is a jurisdictional requirement, a district court may dismiss a case *sua sponte* if it determines that a plaintiff lacks standing." *Eclipse Mfg. Co. v. M&M Rental Ctr., Inc.*, 521 F. Supp. 2d 739, 742 (N.D. Ill. 2007) (citing *Metallgesellschaft AG v. Sumitomo Corp. of Am.*, 325 F.3d 836, 842–43 (7th Cir. 2003)). The Court notes that while, in certain instances, it is improper to dismiss a claim *sua sponte* if the dismissal deprives "the losing party of the opportunity to present arguments against dismissal," *Stewart Title Guaranty Co. v. Cadle Co.*, 74 F.3d 835, 836 (7th Cir. 1996), that concern is not present here because the Litchfield Cavo Defendants did raise the argument in their motion to dismiss, and Plaintiff responded to the argument in his response.

[4] Private parties may bring lawsuits under Title III to obtain injunctive relief; monetary damages are not available. 42 U.S.C. § 12188(a); see also *Scherr*, 703 F.3d at 1075–76.

below, Plaintiff has failed to satisfy this threshold requirement.

Plaintiff's alleged injuries under the ADA are two-fold, both of which relate to events that occurred at the parties' September 2013 mediation: (1) Defendants failed to make aurally delivered information available to Plaintiff at the September 2013 mediation (Count I), and (2) Defendants failed to allow Plaintiff time to read the settlement agreement presented at the September 2013 mediation (Count II). But these allegations relate only to past occurrences, and the Supreme Court has held that "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief * * * if unaccompanied by any continuing, present adverse effects.'" *Lyons*, 461 U.S. at 95–96 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). Thus, even if these allegations were sufficient to establish a violation of Plaintiff's rights under Title III of the ADA (an issue that the Court does not address at this time), because the September 2013 mediation has ended, Plaintiff must allege facts demonstrating a likelihood that Defendants will repeat these alleged offenses in the future. See, *e.g.*, *LaRosa ex rel. LaRosa v. Walgreen Co.*, 2012 WL 2526661, at *2–3 (N.D. Ill. June 29, 2012) (holding that plaintiff lacked standing to bring claims under Title III of the ADA based solely on prior acts of discrimination).

Before reviewing Plaintiff's arguments regarding his potential for future harm, it is necessary to delineate the types of acts that might qualify as future ADA violations so as to satisfy Article III's injury-in-fact requirement. In particular, Title III of the ADA prohibits discrimination on the basis of disability "in the full an equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §§ 12182(a). A lawyer's office is a place of public accommodation per 42 U.S.C.

§ 12181(7)(F), and thus Title III forbids a law office "from excluding 'disabled persons from entering the facility and, once in, from using the facility in the same way that the nondisabled do.'" *Shott v. Vedder Price, P.C.*, 527 F. App'x 562, 563 (7th Cir. 2013) (quoting *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999)). Plaintiff only references one such place of accommodation in his Complaint (*i.e.*, a facility owned, leased, or operated by Defendants): namely, the Litchfield Cavo Defendants' Chicago law office. Accordingly, the Court assesses whether Plaintiff alleged a likelihood of future harm at this particular venue.

As a basis for assessing Plaintiff's arguments, the Court notes that Plaintiff highlights three visits to Litchfield Cavo's Chicago office in his Complaint. The first occurred in January 2011 for Plaintiff's deposition. Plaintiff admits that Litchfield Cavo arranged for and provided CART services for him at this deposition, and does not allege that Defendants failed to accommodate his disability in any way during that visit. The second visit is the September 2013 mediation, where Plaintiff claims that all Defendants violated his rights under Title III of the ADA, as described above. The third visit occurred in February 2014 when a security guard denied Plaintiff entry into the building where Litchfield Cavo's Chicago office is located (*i.e.*, not the Litchfield Cavo office itself) because Plaintiff was accompanied by a service animal. But the security guard in question was not a Litchfield Cavo employee, and Plaintiff does not allege any facts indicating that Defendants discriminated against him at their place of accommodation. Further, Plaintiff does not allege that he was ever discriminated against on the basis of his disability at any place of accommodation owned, leased, or operated by the Guth Defendants. Thus, to be clear, the only instances of discrimination to have allegedly taken place at a Defendant's place of public accommodation occurred during the September 2013 mediation.

To support his claim that Defendants are likely to discriminate against him in the future,

Plaintiff argues that his Complaint lists a number of examples where the Litchfield Cavo Defendants have already discriminated against him since the September 12, 2013 mediation. But the bulk of the allegations in question simply recount Plaintiff's ongoing frustrations with his legal adversaries (many of which occurred in court) and fail to state that Defendants discriminated against him at their respective places of accommodation. Plaintiff's sole reference to a potential repeat offense—his February 2014 visit to Litchfield Cavo's building—is unavailing because, as described above, Plaintiff never actually entered Litchfield Cavo's office, and the alleged discriminatory actor was a security guard unaffiliated with Defendants. Regardless, these instances are all past events, and Plaintiff fails to establish how these visits are indicative of any actual or imminent future harm. See *James v. Arevalo*, 2014 WL 1321280, at *3 (N.D. Ill. Apr. 2, 2014) (finding a lack of standing under Title III of the ADA where the Plaintiff alleged only "one instance of past conduct").

Plaintiff's argument that he intends to return to Litchfield Cavo—his adversary in ongoing litigation—at some point in the future is also unavailing because the Supreme Court has held that plaintiffs' claims of an "intent to return to the places they had visited before—where they will presumably, this time, [suffer the same injury they suffered before]—is simply not enough. Such 'some day' intentions—without any description of concrete plans, or indeed even any specifications of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Lujan*, 504 U.S. at 564 (quotations and citations omitted). Plaintiff has not alleged any actual plans to visit Litchfield Cavo's office in the future, be it for a deposition, mediation, or otherwise. But even if Plaintiff had concrete plans to return to Litchfield Cavo's office, he has not demonstrated a likelihood that Defendants will fail to accommodate his disability at any such visit. Indeed, Plaintiff admits that, upon his request,

8

Litchfield Cavo provided him with CART services at his January 2011 deposition, and Plaintiff admits that he did not request CART services at the September 2013 mediation. Similarly, Defendants did not discriminate against Plaintiff when he delivered courtesy copies to Litchfield Cavo's office (after the September 2013 mediation), establishing that the Litchfield Cavo Defendants are capable of interacting with Plaintiff without violating his rights under the ADA. While it is of course possible that Defendants could discriminate against Plaintiff at some point in the future, Plaintiff has failed to establish that such an occurrence is either likely or imminent, and thus Plaintiff does not have standing to bring this claim under Article III of the Constitution.

Because Plaintiff has failed to satisfy the injury-in-fact element of standing, the Court need not address the other two required factors. See *Plotkin v. Ryan*, 239 F.3d 882, 885 (7th Cir. 2001). Likewise, because the Court agrees with Defendants' argument that Plaintiff lacks Article III standing to bring this suit, it need not address Defendants' alternate grounds for dismissal, or the Litchfield Cavo Defendants' Motion to Strike. See *Johnson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 719 F.3d 601, 607 (7th Cir. 2013).

### III. Conclusion

For the reasons set forth above, the Court grants Defendants' motions to dismiss Plaintiff's complaint [16, 26], and denies as moot the Litchfield Cavo Defendants' motion to strike [19]. The Court also grants Plaintiff's motion for leave to file a surreply [37], although Plaintiff need not file an additional copy of the surreply on the Court's docket. Plaintiff's Complaint [7] is dismissed. Although it appears unlikely that Plaintiff can cure the deficiencies noted above, in an abundance of caution and given Plaintiff's *pro se* status, the Court will allow Plaintiff until January 20, 2015 to file an amended complaint if he believes that he can overcome the lack of standing apparent on the basis of the allegations of his prior complaint. If Plaintiff

does not file an amended complaint by January 20, 2015, the Court will enter a final judgment in favor of Defendants and against Plaintiff.

Dated: December 22, 2014

                                                    Robert M. Dow, Jr.
                                                    United States District Judge